297 So.2d 614 (1974)
STATE of Florida, Appellant,
v.
Fredrick George GANSZ et al., Appellees.
No. 73-976.
District Court of Appeal of Florida, Fourth District.
July 19, 1974.
*615 David H. Bludworth, State's Atty., and H. Bryant Sims, Asst. State's Atty., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Kenneth J. Scherer, Asst. Public Defender, West Palm Beach, for appellees, Patricia C. Gansz and Peter G. Glynn.
Martin Luther Haines, III, of Haines & Penrose, North Palm Beach, for appellee, Fredrick George Gansz.
CROSS, Judge.
The appellant, State of Florida, files this interlocutory appeal from an order granting the motion to suppress evidence by appellee, Fredrick George Gansz. We affirm.
On July 24, 1972 the appellee-defendant, Fredrick George Gansz, pled guilty to the crime of possession of marijuana in excess of five grams, a felony. The trial court withheld adjudication and placed Mr. Gansz on probation for three years.
Between 3 p.m. to 4:30 p.m. on March 27, 1973, Mr. Gansz's probation officer received an anonymous telephone call. The caller inquired of the probation officer if he was Mr. Gansz's supervisor, and then stated: "Why don't you go to his [Gansz's] house? He has drugs there. He has been dealing since he has been on probation." The anonymous caller then hung up.
At 10 p.m. on March 27, 1973 the probation officer decided to go to Gansz's house and took with him two other probation officers and police officers of the West Palm Beach Police Department. The police were instructed by Mr. Gansz's probation officer to remain outside the dwelling. The probation officer knocked on the door of the Gansz house. A male visitor answered the door and said that Mr. Gansz was asleep. Mr. Gansz's probation officer asked the visitor to awaken Mr. Gansz. The visitor then left the door open and went to awaken Mr. Gansz.
Mr. Gansz's probation officer and the other two probation officers then proceeded to walk into the living room through the open door. Mr. Gansz appeared in the living room and was told by his probation officer, "Fred, I have reason to believe that there's some stuff in your house. I want to search it." Mr. Gansz replied, "Sure, man, I am going to sleep."
The ensuing search of the Gansz residence by the probation officers uncovered marijuana in a vegetable bin in the refrigerator. At this point, Mr. Gansz's probation officer invited the police into the house to identify the substance found in the vegetable bin. Additional marijuana was found in other locations in the dwelling.
Thereafter, Mr. Gansz was charged with possession of marijuana in excess of five *616 grams. Prior to trial, Mr. Gansz moved the court to suppress the evidence identified as marijuana which the state sought to use at the trial. After hearing argument on the motion, the trial court entered an order granting Mr. Gansz's motion to suppress. It is from this order that the state files this interlocutory appeal.
The state adopts a two-pronged attack against the trial court's order. First, the state insists that Mr. Gansz's status as a probationer precluded him from protection granted under the fourth amendment.
The fourth amendment puts a restraint on the arm of the government and prevents it from invading the sanctity of a man's home or his private quarters except under safeguards calculated to prevent oppression and abuse of authority. The fourth amendment exempts no branch of government from the commandment that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Its protecting arm extends to all alike, worthy and unworthy, without distinction. "Rights intended to protect all must be extended to all, lest they so fall into desuetude in the course of denying them to the worst of men as to afford no aid to the best of men in time of need." Goldman v. United States, 316 U.S. 129, 142, 62 S.Ct. 993, 999, 86 L.Ed. 1322 (dissenting opinion) (1942).
The benefits that accrue from this and other articles of the Bill of Rights are characteristic of democratic rule. They are among the amenities that distinguish a free society from one in which the rights and comforts of the individual are wholly subordinated to the interests of the state. We cherish and uphold them as necessary and salutary checks on the authority of government. They provide a standard of official conduct which the courts must enforce.
Accordingly, we determine that the fact that a defendant is a probationer does not deprive him of his constitutional guaranty against unreasonable searches and seizures. A defendant's status as a probationer may, however, be considered in determining whether a search and seizure is reasonable or whether there is probable cause for the issuance of a search warrant. See Martin v. United States, 183 F.2d 436 (4 Cir.1950); Application of Tomich, 221 F. Supp. 500 (D.C.Mont. 1963); 79 C.J.S. Searches & Seizures § 24 (1952).
Since Mr. Gansz was not deprived of his constitutional guaranty against unreasonable searches and seizures by the fact that he was a probationer, the question remains whether the search by Mr. Gansz's probation officer and the other two probation workers who were actng under governmental authority was reasonable. Under the facts and circumstances of this case it was clearly necessary for the officers to obtain a search warrant before conducting their search of the Gansz residence. No search warrant was obtained. We, therefore, conclude that the search of the defendant's home and the seizure of the marijuana was unreasonable.
We now turn to consider the second contention of the state, i.e., that Mr. Gansz voluntarily gave consent to the search.
Although a search and seizure conducted by governmental officers may be otherwise unreasonable and illegal, the evidence obtained from such an action may still be admitted in a prosecution against a criminal defendant if the defendant knowingly, intelligently, freely and voluntarily gave consent to the search and seizure. The clear and convincing evidence in the instant case does not reveal that the defendant voluntarily consented to the search and seizure.
Mr. Gansz was aroused from bed late at night and confronted by his probation supervisor and two men whom he had never before seen. He was never informed of his right to decline permission for the search and possible seizure. Mr. Gansz *617 was merely acquiescing to the state's show of authority. Such could not be considered as voluntarily consenting to the search and seizure.
Accordingly, the trial court's order granting the defendant's motion to suppress the marijuana is affirmed.
Affirmed.
MAGER, J., and HARE, RAYMOND J., Associate Judge, concur.