## STATE v. MINEO.

No. 74-513.

Circuit Court, Lake County.

June 6, 1975.

G. MacKenzie Rast, Assistant State Attorney, Tavares, for the state.

Philip E. Vitello, Coral Gables, for the defendant.

W. TROY HALL, Jr., Circuit Judge.

Limitations on governmental power in regard to its citizens is not a recent development. From the time people sought to govern themselves it became apparent that to secure fundamental rights it was essential to protect them against governmental intrusions, otherwise such rights would be empty. The founding fathers sought to protect certain rights which they considered fundamental against governmental interference. They realized that there must exist some reins on authority for our rights to be of any weight, and accordingly sought the adoption of the Bill of Rights to fulfill that function. The founding fathers realized that nothing can destroy a government more quickly than its failure to observe its own laws, and constitution — which is the charter of its existence.

This cause having come on to be heard upon the defendant, Robert Mineo's, motion to suppress, and the court having heard testimony and being otherwise fully advised in the premises,

It is ordered that the evidence in question shall not be introduced against Robert Mineo in any further proceedings in the above styled cause.

*Factual summary*

On September 18, 1974, at approximately 7:40 P.M. Officer Thomas Carlisle of the Lake County Sheriff's Department received a teletype message from Detective Kenneth Each, of the North Miami Police Department, that a white 1974 Continental Mark IV and a black 1973 Chevrolet pick-up truck were to meet at a Howard Johnson's Motor Lodge somewhere near Orlando and there and then transfer an amount of marijuana which had been illegally transported into the state in the pick-up truck. At 11 P.M. on the same date, Lake County officers saw a white Continental Mark IV that fit the description transmitted on the teletype. At that time they stopped the Continental Mark IV and requested permission to search that vehicle. Said vehicle was in the possession of Joseph Barmore and Helen Mineo. The occupants consented to a search of the motor vehicle. The search disclosed no contraband but the officers requested that the occupants follow them to a municipal police station. After further discussion at the police station the occupants and the motor vehicle were released from custody.

At approximately 12:30 A.M. on September 18, 1974, Lake County sheriff's deputies located a 1973 Chevrolet pick-up truck

fitting the teletype description. Lake County police officers obtained the names and hotel room numbers of the occupants of the car from Barney Hall, the hotel clerk of the Howard Johnson's Motor Lodge, Route 27, Groveland. The police officers then staked out the vehicle and informed the sheriff's department which sent three additional police officers.

At approximately 2:30 A.M. Officer Tommy Carlisle of the Lake County sheriff's office along with Bill Worley, Bob Tanner and James Harrison, deputy sheriffs, knocked on the door of hotel room #309 of the Howard Johnson's Motor Lodge. Said room was occupied by Robert Mineo, John Kennedy and Debbie Robertson. The police officers had no warrant. Officer Carlisle informed the occupants of the room that he had received a teletype from Dade County that led him to believe that a 1973 pick-up truck belonging to Joseph Barmore and in the possession of Robert Mineo and John Kennedy contained contraband narcotics. The police officers requested that the defendant, Robert Mineo, open the truck so that a search might be made. The defendant refused to consent to the search and as grounds therefor stated that he was not the owner of the vehicle and if they wished to search it they should contact Mr. Barmore himself. The police officers continued to request that Mr. Mineo and Mr. Kennedy open the truck and Mr. Mineo still refused to do so. The police officers requested that the defendants accompany them downstairs to where the vehicle was parked. Once in the parking lot they continued to insist upon Mr. Mineo's consent for their search of the vehicle. Mr. Mineo continued to refuse. At this point an officer raised his voice to Mr. Mineo and told him that as custodian of the vehicle he had the right to let the police search the vehicle. After 15 minutes of discussion Mr. Mineo was persuaded to open the truck so that the officers might search it. Mr. Mineo than returned to the hotel room and produced the key to the vehicle for the officers. At the request of the officers he opened the vehicle and the officers searched it. Their search revealed approximately 6 pounds of Cannabis sativa. At this point the officers placed the defendants under arrest in the parking lot and then went back into the hotel room and conducted a search of those premises. The hotel room search disclosed approximately 0.2 grams of Cannabis sativa and certain other contraband. The defendants were then transported to the Lake County jail.

### Contentions of the prosecution

It is the contention of the prosecution that the search conducted of the 1973 Chevrolet pick-up truck and the Howard Johnson's motel room were justified in that the officers had probable cause

 

to believe a crime was being committed and, since the contraband was located in a motor vehicle, that exigent circumstances existed which justified a warrantless search of the motor vehicle. The state also seeks to justify both searches on the grounds that the defendants consented thereto.

### Contentions of the defendants

The defendants contend that the search and seizure described above was illegal in that the consent obtained from the defendant Mineo was mere acquiescence to authority and not a voluntary and knowing waiver. It is also the defendants' contention that the exception made for automobile searches does not apply in the instant case in that there were no exigent circumstances in that the motor vehicle was not moving and the police officers had it under surveillance for approximately two hours prior to their search of the vehicle. The defendants are not contending that probable cause for such search did not exist.

### Questions of law

There are two questions of law presented. First, did the defendants voluntarily waive their right against unreasonable search and seizure and consent to the search of the vehicle and the search of the hotel room, and, secondly, did the officers have the right to conduct a warrantless search under the emergency doctrine in that they had probable cause to believe a crime was being committed and exigent circumstances existed which made it impossible to secure a search warrant.

### Findings of fact and conclusions of law

Upon completion of the testimony heard in this case the state conceded that the defendants did not in fact consent to the search of the vehicle or the search of the hotel room. It is the state's position, however, that the search was still justified under the emergency doctrine in that probable cause and exigent circumstances existed as to the contraband in the motor vehicle. Special mention should be made concerning the candid and forthright manner in which the officers testified. There was no attempt to conceal facts or withhold information even though doing so would have aided the state's cause immeasurably. The court recognizes and appreciates the exceptional manner and high integrity in which these officers conducted themselves.

The law controlling the waiver of a constitutional right against search and seizure is stated in Schneckloth v. Bustamonte, 412 U.S. 219 (1973). In that case the Supreme Court of the United States

stated that we must look to the totality of the circumstances concerning an alleged waiver in order to determine whether or not it is a voluntary and knowledgeable waiver or whether it is mere acquiescence to constituted authority. The evidence presented by the state as to the voluntary waiver must be clear and convincing. State v. Ansley, 251 So.2d 42 (2d D.C.A. Fla. 1971) and Sagonias v. State, 89 So.2d 252 (Fla.). If the defendant Mineo consented to the search only because of fear of the superior position of the police, this is not a voluntary consent, Pekar v. U. S., 315 F.2d 319 (5 C.A. 1963). The Supreme Court went on to say that the circumstances which may be considered in reviewing the voluntary nature of a waiver include the prolonged nature of the questioning, the number of officers present, the time of day of the search and whether or not the defendant had been advised of his right to refuse to consent to the search.

In Ganz v. State, 297 So.2d 614 (4 Dist. 1974), the court reversed the denial of a motion to suppress when a defendant had been aroused from bed by officers. The defendant was informed by his probation officer that they had a tip that he had drugs in his home and they wanted to search it. The defendant consented to the search immediately and the search produced contraband drugs. The Fourth District in reversing stated the defendant was not told of his right to refuse and the circumstances were inherently coercive and therefore the consent was not voluntary and knowledgeable. The circumstances in this case are very similar to those in the *Ganz* case in that both involved night searches, multiple officers and the defendant in neither case was informed of his right to refuse the search. In light of the testimony adduced at the motion to suppress it is clear to the court that the defendants consented only under fear of the superior position of the police and their consent was mere acquiescence to constituted authority and did not represent a voluntary and knowledgeable waiver of their rights. I therefore find that there was no consent to the search of either the automobile or the hotel room.

The question of the emergency doctrine of motor vehicle searches is clearly set forth in Chambers v. Maroney, 399 U.S. 42 (1910). In these cases the Supreme Court held that a warrantless car search is permissible as an exception to the usual rule that the police officers must obtain a search warrant before making a search if there is probable cause to believe a crime is being committed and exigent circumstances exist which make the securing of a search warrant impossile. In the *Chambers* case the court went on to say that exigent circumstances justify a warrantless search of an occupied automobile stopped on the highway because a car is moveable and its occupants are alerted to police interest and the

contents may never be recovered if a search warrant must be obtained.

In the present case the defendants concede correctly or incorrectly that probable cause existed to believe that a crime had been committed, but they maintain that no exigent circumstances existed because the car was under the surveillance of the officers from the time it was discovered and was therefore incapable of being moved without the officers observing the attempt. The prosecution contends that exigent circumstances did exist because they did not know whether or not all the defendants were in the hotel room and that other unidentified defendants may have existed who could have moved the car. The court rejects this position for the simple reason that the police officers had not only the hotel room under observation but the motor vehicle itself, obviously the vehicle was not fleeing or even moving and was in fact unoccupied. The mere fact that a locked, unoccupied, unmoving motor vehicle is suspected of containing contraband does not in and of itself constitute exigent circumstances under the *Chambers* doctrine. See Coolidge v. New Hampshire, 403 U.S. 443 (1971), and U.S. v. Chadwick, federal district court, Massachusetts, decided 1/13/75 and as yet unreported.

In the case at bar none of the exigent circumstances that justified the *Chambers* warrantless search were present. The differences become apparent upon careful reflection. In *Chambers,* the car was on the highway and was occupied by persons who fit the radio car description of armed robbery suspects. By stopping the vehicle in question the occupants were alerted to police interest. If the car in *Chambers* was allowed to continue its contents might never have been recovered and therefore there was not time to obtain a warrant. In the case at bar, the automobile was not proceeding on the highway, it was parked and unoccupied in a parking lot. The officers testified that to their knowledge the defendants did not even know of police interest and therefore the chances of the contraband being destroyed were greatly reduced. Further, the theory of exigent circumstances is certainly strained when it becomes apparent that the officers knew of the probable role of this vehicle in the crime for 8 hours before the emergency search was finally instituted. In light of the above, I find that even if probable cause to believe a crime was being committed was present, the equally essential element of exigent circumstances was not present and therefore the search of the motor vehicle was unreasonable and therefore proscribed by the Fourth Amendment to the United States Constitution and the Florida Constitution.

The motion to suppress is therefore under the factual circumstances, and in the light of the applicable law, granted.